Good morning. My name is Peter Moot. I represent Kenneth McElroy who is the appellant here. This is an appeal from a social security decision that found that he was capable of working as a light cleaner janitor type work or as a security guard and we have taken issue with that. I think the starting point here is to look at the findings that the administrative law judge did make in this case. There were two hearings in the case and the first hearing resulted in an appeal and a remand from the United States District Court accepting the findings of the administrative law judge but remanding it on the issue of vocational testimony because the commissioner had not presented any. The claimant, Mr. McElroy did through a licensed certified vocational expert whose testimony was accepted at the first hearing but the commissioner had not presented testimony. From our standpoint, Mr. McElroy should have been awarded his benefits at that point but the district court sent it back for a specific purpose of evaluating Mr. McElroy's credibility and to present vocational testimony. That there was some work in the economy that he could perform. If we look at the findings of both hearings that encompass this entire decision, he found that Mr. McElroy had sufficient quarters for coverage. He was unable to return to former employment that he had been employed at. Can I just ask you to, I appreciate that background, but the issue that I start with is the credibility issue because it seems to me all of the other findings hinged on that in terms of the finding that he was not entirely credible as to his subjective pain testimony. So I'd appreciate it if you could address why you think that is not sustained under the standard of review. All right. What's interesting about that is the administrative law judge said he did not find Mr. McElroy credible and yet when we look at the findings that he made, we get right down to the fact that he was disabled from everything he could have done previously. So I'm not sure what relevance that had, but when you look at Mr. McElroy's testimony, it was supported by the doctors. He had two very reputable board certified physicians that supported his degree of disability that he testified to. So it's not as though he presented a case where this hurts and that hurts. It's subjective and it's always difficult for a doctor or anyone to determine the degree of pain or restriction a person has when they're complaining about it. I guess the thing that what I thought the ALJ was saying is that his various daily activities, including the suggestion that he walked two miles, seemed inconsistent with his description of pain and activity. And so obviously there doesn't need to be a one-to-one correlation, but under the question as to whether there's some evidence for that conclusion, where do you think the disjunction is? The fact that the administrative law judge ignored the objective evidence in the case that supported Mr. McElroy's restrictions and ignored the opinions of these board certified physicians about his disability that is consistent with his complaints. For instance, he was diagnosed as having severe fibromyalgia. There are objective tests that are used in order to determine if a person does have fibromyalgia. Dr. Brown, who's probably the leading specialist in that area, found that he had met all of those criteria. Therefore, objectively, he has severe fibromyalgia. Fibromyalgia is a condition that creates very severe pain in many areas of the body, and Dr. Brown identified the neck, the shoulder, the upper extremities, and the lower extremities. Mr. McElroy's neurologist, Dr. Ginsberg, identified a ruptured disc at L4, L5. That is objective evidence of an individual's complaints of pain and restriction, just like the objective evidence of the fibromyalgia. Mr. McElroy testified that he could only walk for 15 minutes in the period of an hour to an hour and a half, and then he would have to sit down or lie down and use ice to try and bring the swelling or pain under control so he could get up and try and do some further activities. That it would take him a full day in order to just do his household chores. It would be making meals, cleaning the house, doing dishes and vacuuming. It would take him a whole day because he could only work for 15 to 20 minutes at a time and have to take a break in order to get back to it again. The administrative law judge just pointed to a couple of minor things to say he didn't believe Mr. McElroy to be credible, but he ignored the medical testimony and the objective tests that completely support that. He also made findings that Mr. McElroy was not capable of returning to any of the work that he had done in the past, which was a carpenter, a construction worker, a gardener, that the severe fibromyalgia that was found is a condition that the courts have accepted as creating total disability. The administrative law judge wanted to see the Department of Labor and Industry record in order to see what additional evidence there was and used some of that, but used it incorrectly. For instance, he used the panel examination in August of 1992 to say that the doctors there felt Mr. McElroy could do light duty work, but that was a contingent opinion based upon the results of a physical capacity examination that they recommended be done. It was completed. It showed that Mr. McElroy could not perform light duty work. He could not even perform sedentary work, and that evidence was related back to the relevant period of time in 1992. So his opinion there is based upon a provisional opinion of two doctors who then would have had to reexamine that opinion because of the physical capacities exam. And when you look at the vocational evidence that was supposed to be considered when the district court sent the case back, the administrative law judge called a Ms. Stewart, a vocational consultant, who had never read any of the medical file, didn't know his medical background, his mental health background, his cognitive deficits, his mild depression, didn't know that the judge had already found he had severe fibromyalgia. She knew none of this and then made an opinion that he could perform light janitorial work, which required repetitive bending, stooping, lifting of items of more, up to 20 pounds, and yet she acknowledged that if his physical capacity exam showed he could not lift up to that amount, then he could not perform that job. She was not aware of the medications he was taking that clouded his mind so that he could not competently be a security guard and that he couldn't walk six hours in an eight-hour day. That's the requirement of the janitorial job and the security job. You have to be able to be on your feet, walking, climbing stairs, attending to various areas and buildings in order to be a security guard, and you have to have your wits about you. You can't be on medications that cloud your mind. And the administrative law judge gave her a hypothetical. Assume that all he has is a cervical condition that prevents him from making sudden movements with his neck and that he can't work around machinery or something that requires climbing or heights. That was the extent of the hypothetical. Based on those hypothetical facts in this case, he asked the vocational consultant, what can he do? And she said he could do light janitorial work and security guard work. He left out the fact he'd already found her to have severe fibromyalgia, that he was taking these pain medications and muscle relaxants affecting his ability to think. He left out the fact that even the doctors, the physical capacity exam had acknowledged that he couldn't do light duty work. Did you want to save time for rebuttal because you're about there? Yes. Thank you very much. May it please the Court. Lisa Wolf on behalf of the Commissioner. I'd like to start with the medical evidence unless you wanted me to address the credibility issues. In this instance, the ALJ found that Mr. McElroy, I'll call him plaintiff hereafter, had severe fibromyalgia. I'm having trouble hearing you. Sorry, Your Honor. I'm going to be speaking a little too fast. The ALJ found that he had severe fibromyalgia, but did not find that he had severe depression or any cognitive. This is a case, plaintiff's case fails here because he could not show how his condition worsened after or prior to December 1992. This is a Title II case involving insurance benefits, in essence, and his insurance lapsed on December 31, 1992. Mr. McElroy is a hardworking man. He worked his entire life. He paid into the system. But what we have here is the medical evidence, and we need to look at what's in the record showing disability. Is there anything in the record indicating what fibromyalgia generally occasions? What kind of effect on the body? His first diagnosis, fibromyalgia is a severe condition, Your Honor, and the ALJ acknowledged that. Usually all the joints. Right. And his very first diagnosis was a probable. And the ALJ gave him the benefit of the doubt here and found it to be a severe impairment and attempted to craft a residual functional capacity assessment based upon the exertional. But he later, after MRI, found that he did, in fact, diagnose fibromyalgia, did he not? Right. That is correct, Your Honor. Right. He had that diagnosis by 1992, correct? I believe that's correct, yes. So we take the fibromyalgia then as a given. It is. It's a severe impairment. He found it to be severe. So the only question is how severely impaired was he by the fibromyalgia? And the question really is whether the ALJ's decision or conclusion that he didn't believe him is supported by, quote, clear and convincing reasons. Correct. Isn't that the issue in front of us? There's also the mental impairments and cognitive, but I'll move on to the credibility here. I think this is your point. It seems to me it's the first he finds credibility, and then he also, the functional capacity report also is contingent on credibility. So we're in this cascading credibility dispute, it seems to me. Right. Here there were clear and convincing evidence. The ALJ acknowledged that the plaintiff had difficulties. He crafted a light residual functional capacity for light work. He limited him to some sudden neck movements, right and left. No, but that's not, that's what he does after he finds that he doesn't believe him. So I want to get at whether he has the clear and convincing reasons not to believe him. Plaintiff made some severe allegations here that weren't supported by the record, and medical evidence is a component of when looking at the credibility. As I read what Dr. Brown said, it was substantially consistent with Mr. McElroy's testimony. He alleged that he had difficulty getting out of bed, dressing or standing for more than five minutes, yet he testified at the hearing that he did a real big exercise, albeit slowly, up to two miles a day. He told, and he told Dr. Burkhart he walked up to two miles a day, not at a quick pace, but he walked. That's because they told him to do that, right? And that's the irony of fibromyalgia is that most physicians do recommend exercise to treat and ameliorate the symptoms of fibromyalgia. Kennedy, which would be all to his credit, wouldn't it? It certainly doesn't show malingering. If you're trying to do what the doctors are telling you, it's going to be the best for fibromyalgia. And I'm not arguing malingering here. This is a hard worker. And I, yeah, his question is, was he disabled prior to December 31st? And the ALJ looked at all the evidence here. He noted the activities of daily living are just one piece of the puzzle. They're not insignificant here. He took care of his own personal care. He prepared meals. He went grocery shopping. He did light housework and laundry. And at what pace did he do all these things? That I don't know. His testimony, if you believe it, is very slowly, with a lot of rest periods. So you can't use his testimony that he did it very slowly and with a lot of rest periods to say that he did it quickly or easily, because that's not what he said. Right. And the ALJ just noted that his assertions of his ability, of functioning ability, weren't entirely consistent with the laundry list of things. The ALJs do see people in different states of different conditions. And we don't have any contemporaneous medical evidence documenting the level of fatigue that he alleges or his need to lie down or ice prior to his date last insured. There's nothing contemporaneous in the record. And that's what makes this a very difficult case for Mr. McElroy. We have retrospective diagnoses and treatment records and speculative nature of this may have went back prior to his date last insured. If this was not a Title II case, he wouldn't have to prove he was disabled for a period prior to December 31, 1992. And if you look at the medical evidence, it's all post-date last insured. And when I was preparing this case, I did it at both levels. I looked at that, because this is a hardworking individual who paid insurance premiums. And the medical evidence is not there to support the level, nature, extent of his disabling. These cases with daily activities are always difficult, because if you say you lie in bed and do nothing, then they say, well, then you are a malingerer. So now he gets out of bed and he tries to do things, and they say, well, you're saying you're actually trying to go about your daily life, but that's inconsistent with being disabled. So we do have cases that suggest that carrying on a life within the home is not inconsistent, of course, with being disabled, because it's not like he's cooking 8 hours a day, or it's not like he's dressing himself 8 hours a day, or in any consistent way. So how do you fit this situation into those cases? Well, I've never asserted in this matter that Mr. McElroy is a malingerer. No, no, no. I know. I appreciate that. I'm just saying that that's the irony of these cases. You tend to, you're damned if you do, you're damned if you don't kind of thing. Right. Right. Well, some people report less vigorous activities of daily living, maybe less robust. And the lay witness here said that he couldn't chop or split wood as much as he used to. A little vague on the time, of the time frame, and so the ALJ addressed germane reasons for rejecting his friend's testimony. But you look at a global, and the medical evidence also showed that he had a full range of cervical spine, a full range with pain at the extremes of movement. And his neurological findings were essentially normal, and that's transcript 241 to 242. So the ALJ looked at the medical evidence, and he looked at the allegations that the plaintiff reported, what his day was like and the pain that he reported. And he found that the allegations weren't supported by the objective medical evidence. He had to ignore the physical therapist, who I suppose that's only counted as a lay witness testimony, but he's ignoring those. He found that it was performed by an occupational and physical therapist. Under our regulations, unfortunately, those are lay witness. And he also found that the findings were, there was some testing, but that they were, a lot of the findings were based upon, as you've noted, based upon subjective allegations. One other thing that's somewhat troubling here is it seems that the ALJ went to some effort to rather mischaracterize or overblow some of his, of Mr. McElroy's statements. And the district court even noted that. I mean, you know, a couple times here where the ALJ doesn't really accurately portray what's even in the record. So would you agree that although we're reviewing this de novo with respect to the record itself, not with respect to the district court's findings, but that is troubling, it seems to me, against this backdrop where you have a question of credibility and we don't have evidence to contradict the credibility, but we have the ALJ for whatever reason kind of stretching Mr. McElroy's testimony. Could you comment on the district court's notation on that point? I would comment that a few of the citations and references to the record didn't contain references to what the ALJ stated, and I believe I corrected that on our brief. I just reread Dr. Brown's report. It's essentially contemporaneous with the period during which he is claiming his disability. It doesn't say it's Dr. Brown's report, August 12, 1992. I'm struck by how consistent Dr. Brown's 1992 report is with Mr. McElroy's description of his symptoms that, if accurate, make him disabled. I mean, I don't — instead of finding the inconsistency between the medical report, which is a contemporaneous medical report, I find it consistent. Would you comment on that? Are you referring to the fibromyalgia and the functional — I'm referring to Dr. Brown's report, which is at page 1 of the ER, dated August 12, 1992. Okay. Mr. — Your page, please. It starts on your page, I think, 157, runs over 158, and then later. I'm responding to your comment about, you know, all we have is these medical records from later. Well, we have this one that's, you know, pretty much when it should be, and it sounds to me pretty consistent. Right. And Dr. Brown's report here contains objective and subjective considerations, as Your Honor noted. And he provides a recitation of medical evidence. Right. But he doesn't outline any functional resolutions concerning Mr. McElroy's abilities at that point. No, he's not. But he does document the fibromyalgia. He's not acting as a disability assessor. He's acting as a doctor. Right. And he notes the fibromyalgia. And ALJ did find this to be a severe impairment. And he's — it is a severe impairments case. Thank you. Thank you. We have about a minute for rebuttal. Your Honor, I actually had turned to Dr. Brown's report, too, because he is the specialist, and he saw Mr. McElroy starting in January of 1992, which then encompasses the whole period at issue. And he reviewed the past medical records and reported on those and makes a very clear case of how Mr. McElroy, in the course of his employment, had injured his back and injured his neck and that the conditions were worsening. They became progressively worse starting in 1990, going into 1991. Mr. McElroy was sent by his normal treating doctor to a Dr. Witte, who is a rheumatologist who also diagnosed fibromyalgia and the limitations prescribed medications. Mr. McElroy's symptoms in 1991 and 1992 were described as pain beneath the right shoulder blade, up into the neck, headaches, increased pain with neck motion in any direction, feels there is sand in his neck. He has tingling in the arms, which often feel as if they are asleep. He is worse with coughing. Bending over aggravates the problem. He has some weakness in the arms and in the hands, although he is sleeping better because of the medications. He has cramps in his toes. Okay. Thank you, Mr. Moot. We can read Dr. Brown's report, and we have, and we appreciate your argument. Thank both counsel for your arguments this morning. The case of McElroy v. Estrue is submitted. The next case is United States v. Valdez.
judges: Hug, McKeown, W. Fletcher